**State of CONNECTICUT, Plaintiff,**

v.

**MOODY'S CORPORATION, Defendant.**

**State of Connecticut, Plaintiff,**

v.

**Fitch, Inc., Defendant.**

**State of Connecticut, Plaintiff,**

v.

**The McGraw–Hill Companies, Inc., Defendants.**

**Civ. Nos. 3:08CV1314(AWT), 3:08CV1315(AWT), 3:08CV1316(AWT).**

United States District Court, D. Connecticut.

Sept. 30, 2009.

Gary Mann Becker, George W. O'Connell, Matthew J. Budzik, Office of the Attorney General, Hartford, CT, for Plaintiff.

Emily A. Gianquinto, William M. Rubenstein Axinn, Veltrop & Harkrider, Hartford, CT, James J. Coster, Joshua M. Rubins, Satterlee, Stephens, Burke & Burke, LLP, New York, NY, for Defendant.

## RULING ON MOTIONS TO REMAND

ALVIN W. THOMPSON, District Judge.

### I.  BACKGROUND

The State of Connecticut (the "State") filed separate actions, which are the same in all material respects for the purposes of the instant motions, against Moody's Corporation ("Moody's"), Fitch, Inc. ("Fitch"), and the McGraw–Hill Companies, Inc. ("McGraw–Hill") in Connecticut Superior Court, seeking redress for the defendants' alleged "unfair, deceptive and illegal business practice of systematically and intentionally giving lower credit ratings to bonds issued by states, municipalities, and other public entities as compared to corporate and other forms of debt with similar or even worse rates of default." (McGraw–Hill Notice of Removal, Ex. A. (Doc. No. 1) ("McGraw–Hill Compl.") at ¶ 1.) The State alleges that the defendants' actions have harmed these public bond issuers by forcing them to purchase bond insurance to improve their credit rating or to pay higher interest costs on their lower-rated bonds.  These costs, the State alleges, are ultimately borne by all Connecticut taxpayers.

The State alleges that the defendants have violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. §§ 42–110a *et seq.* and that pursuant to Conn. Gen. Stat § 42–110m, "the Connecticut Attorney General, in the name

of the State of Connecticut, seeks restitution, disgorgement, and civil penalties for the injuries suffered by the State of Connecticut and all issuers of public debt in Connecticut, as well as other injunctive and equitable relief to prevent these unfair, deceptive and illegal business practices from continuing." (McGraw–Hill Compl. at ¶ 10.)

The defendant in each action removed it to this court, and the State has moved to remand each action. Joint oral argument was held on the motions to remand. For the reasons set forth below, the motions to remand are being granted.

## II. LEGAL STANDARD

■■■ "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). A defendant may remove an action originally filed in state court only if the case originally could have been filed in federal court, *see* 28 U.S.C. § 1441(a), and that defendant bears the burden of showing the propriety of that removal. *See Grimo v. Blue Cross/Blue Shield of Vermont*, 34 F.3d 148, 151 (2d Cir.1994). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Norwood v. Kirkpatrick*, 349 U.S. 29, 35, 75 S.Ct. 544, 99 L.Ed. 789 (1955) (internal quotation marks omitted). On a motion to remand, "the burden falls squarely upon the removing party to establish its right to a federal forum...." *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir.1979) (citation omitted).

## III. DISCUSSION

### A. The Moody's Complaint

The Fitch and McGraw–Hill complaints, in the section entitled "Prayer for Relief", include paragraphs seeking "[a]n order pursuant to Conn. Gen.Stat. § 42–110m di-

recting [Fitch/McGraw–Hill] to pay restitution". (Fitch Compl. at 25, ¶ 5); (McGraw–Hill Compl. at 23, ¶ 5.) However, in its original complaint against Moody's, under the section entitled "Prayer for Relief", the State requested "[a]n order pursuant to Conn. Gen.Stat. § 42–110m directing Moody's to pay restitution *to the State of Connecticut, its municipalities, and other public entities*". (*See* Moody's Compl. at 27, ¶ 5)(emphasis added). After the case was removed, the State filed an amended complaint against Moody's eliminating the clause "to the State of Connecticut, its municipalities, and other public entities", thus making the prayer for relief in the Moody's complaint the same as that in the Fitch and McGraw–Hill complaints. (*See* Moody's Amended Complaint (Doc. No. 27) at 27, ¶ 5.)

Particularly in light of the contents of the Fitch and McGraw–Hill complaints, the court concludes that the State has accurately represented that the inclusion of the now-deleted language in the original Moody's complaint was the result of a scrivener's error. Thus, the Moody's complaint to be analyzed for the purposes of the instant motion is the amended complaint.

### B. Whether the State is a Nominal or Real Party in Interest

■■■ Federal "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States". 28 U.S.C. § 1332(a)(1). The defendants are not residents of Connecticut. Moody's is incorporated in Delaware and maintains its principal place of business in New York. Fitch is also incorporated in Delaware and maintains its principal place of business in New York. McGraw–Hill, of which Standard &

Poor's is a division, is incorporated in New York and has its principal place of business there. As to the State, "[t]here is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction." *Moor v. Alameda County,* 411 U.S. 693, 717, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). However, in certain circumstances, a state may assume the citizenship of other real parties in interest, and "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 461, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). When a state agency files an action in state court, the out-of-state defendant may remove on the basis of diversity if the state is not the "real party plaintiff." *See Missouri, Kan. & Tex. Ry. v. Bd. of R.R. & Warehouse Com'rs.,* 183 U.S. 53, 58, 22 S.Ct. 18, 46 L.Ed. 78 (1901).

The State contends that it is not a nominal party because it has a sovereign interest in enforcing its own laws and is suing solely on its own behalf under section 42–110m of CUTPA. That section provides:

Whenever the [Commissioner of Consumer Protection] has reason to believe that any person has been engaged or is engaged in an alleged violation of any provision of this chapter said commissioner may proceed as provided in sections 42–110d and 42–110e or may request the Attorney General to apply in the name of the state of Connecticut to the Superior Court for an order temporarily or permanently restraining and enjoining the continuance of such act or acts or for an order directing restitution and the appointment of a receiver in appropriate instances, or both. Proof of public interest or public injury shall not be required in any action brought pursuant to section 42–110d, section 42–110e or this section. The court may award the relief applied for or so much as it may deem proper including reasonable attorney's fees, accounting and such other relief as may be granted in equity. In such action the commissioner shall be responsible for all necessary investigative support.

Conn. Gen.Stat. § 42–110m(a).[1]

The defendants contend that the factual allegations in the complaints, which repeatedly refer to the harm to bond issuers, and the type of relief the State is seeking demonstrate that the State is really suing on behalf of a subset of Connecticut citi-

---

1. This section was added to CUTPA in 1975. *See* Public Acts 1975, No. 75–618. It has continued to evolve as an enforcement mechanism. In 1984, language was added stating that "[p]roof of public interest or public injury shall not be required in any action brought pursuant to ... this section." Public Acts 1984, No. 84–468. Senator Howard T. Owens, in remarking on amendments to the subsection noted that the proposed provision would "allow the state or a private party to bring an action under the Connecticut Unfair Trade Practices Act without having to prove a public interest or injury...." 27 S. Proc., Pt. 4, 1984 Sess., p. 1354. *See also State v. Acordia, Inc.,* NO. X 09 CV 07 4027314, 2008 WL 3243303, 2008 Conn.Super. LEXIS 1791 (Conn.Super.Ct. Jan. 9, 2008) (" § 42–110m ... permits the attorney general to institute an action for equitable and ancillary relief against a person who the commissioner of consumer protection believes has violated the act. § 42–110m(a). This statute contains no requirement that an 'ascertainable loss' be either [pled] or proved."); *Connecticut v. Stephen World of Wheels, Inc.,* 3 CSCR 374, 374–75 (Conn.Super.Ct. Mar. 23, 1988)(finding that actions brought by attorney general to enforce CUTPA are sovereign in nature).

In 1994, the section was amended to include "reasonable attorney's fees" as one type of relief that the court may award. *See* Public Acts 1975, No. 94–16. In support of the provision, Connecticut Attorney General Richard Blumenthal referred to the "deterrent effect" of the "enforcement statute" in seeking higher civil penalties and awarding attorney's fees. Conn. Joint Standing Committee Hearings, General Law, Pt. 1, 1994 Sess., pp. 314–15.

zens, and thus the State assumes the citizenship of those real parties in interest. *See, e.g., Philip Morris, Inc. v. Blumenthal,* 123 F.3d 103, 107 (2d Cir.1997)(noting that "the mere fact that the state is involved as a party does not transform [an] action into a 'sovereign enforcement' proceeding.") (citation omitted).

*Connecticut v. Levi Strauss & Co.,* 471 F.Supp. 363 (D.Conn.1979) is helpful in analyzing the issue present here. In that case, Connecticut brought an antitrust action against Levi Strauss in state court pursuant to Conn. Gen.Stat. § 35–32(a), which authorizes the Attorney General to bring an action in his/her enforcement capacity, and pursuant to Conn. Gen.Stat. § 35–32(c) as *parens patriae* for state residents who suffered damages from high prices and impaired competition. *See id.* at 366. The State sought four types of damages:

> The basic claim is for recovery of the alleged unlawful overcharges incurred by the citizens of Connecticut who purchased Levi Strauss products. Connecticut intends to return the overcharges to all identifiable purchasers. Second, Connecticut seeks to collect and proposes to keep as state funds all provable overcharges that cannot feasibly be returned to identifiable purchasers. Third, Connecticut sues for $250,000 as a civil penalty authorized by Conn.Gen. Stat. § 35–38. Finally, Connecticut seeks an award of attorney's fees.

*Id.* at 370. Levi Strauss removed the action to federal court on diversity grounds.

The court's analysis started with the "principle that 'a state cannot, in the nature of things, be a citizen of any State.'" *Id.* (citations omitted). The court found that "[t]hus, to the extent that Connecticut is suing in its sovereign capacity, its claim cannot be brought within the diversity jurisdiction of a district court." *Id.*

The court then stated:

> If Connecticut were suing as *parens patriae* for the benefit of all its citizens, its capacity would be essentially sovereign, and it would not be a citizen for diversity purposes. But it has long been recognized that a state can act as *parens patriae* for a circumscribed group of its citizens.... When Connecticut claims refunds to be distributed to identifiable purchasers, the citizen status of the purchasers rather than the sovereign status of their benefactor controls for diversity purposes.

*Levi Strauss,* 471 F.Supp. at 370–71. The court also stated:

> However, the claim Connecticut makes for the remainder of overcharges not to be distributed to identifiable purchasers, for civil penalties, and for attorney's fees is brought in its sovereign capacity. These funds are not sought for any specific individuals or group of individuals. The funds would belong to the state. In seeking them, Connecticut cannot satisfy the citizenship requirement of diversity jurisdiction.

*Id.* at 372.

The court also recognized that the basis on which the Attorney General is authorized to bring suit does not change the nature of the action:

> In *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972), which included a *parens patriae* claim alleging violations of federal antitrust laws, complaints of injury to the "general economy" of the state did not change the nature of the claim from one in which the state was really putting forth the claims of many individuals. *Id.* at 262–64, 92 S.Ct. 885. The subsequently enacted § 4C of the Clayton Act, added by the Hart–Scott–Rodino Antitrust Improvement Act of 1976, Pub.L.No.94–435, § 301, 90 Stat. 1394–95 (1976), now

authorizes the attorney general of any state to bring a *parens patriae* suit, in the name of the state, on behalf of those who have sustained injury through violations of the Sherman Act. *But cf. Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). A similar provision exists in Connecticut law. Conn.Gen.Stat. § 35–32. But those authorizations do not change the nature of the suits.

*Id.* at 371 n. 7.

In *Butler v. Cadbury Beverages, Inc.*, No. 3:97–CV–2241 (EBB), 1998 WL 422863 (D.Conn. July 1, 1998), the Labor Commissioner sought double damages, a reasonable attorney's fee, costs, and interest in connection with the defendant's alleged failure to pay wages to one Connecticut citizen. Relying on the analysis of *Levi Strauss*, the court held that "the citizen status of that individual controls for diversity purposes. The plain face of the Complaint mandates such a holding. No relief is requested that would inure to any other person...." *Id.* at *2. Similarly, in *Connecticut Commissioner of Labor v. AT & T Corp.*, Civil No. 3:06CV01257(AWT), 2006 WL 3332982 (D.Conn. Nov. 16, 2006), the Labor Commissioner sought the same types of damages in connection with unpaid wages allegedly due three individual Connecticut citizens. The court, after a discussion of *Levi Strauss*, denied the mo-

tion, citing the distinction between the situation where the State is suing for the benefit of all its citizens and the situation where it is acting for a circumscribed group of its citizens. *See id.* at *2.

■ Here, if the court accepted the defendants' arguments, it would be recharacterizing the factual allegations in the complaints. The defendants seek to have descriptions of the impact of the defendants' alleged actions on particular persons treated as the assertion of claims on behalf of those persons. For example, the State alleges that "Moody's unfair, deceptive and illegal business practices have cost the State of Connecticut and every Connecticut city, town and school district millions of dollars in inflated interest payments and unnecessary bond insurance premiums. All of these costs are ultimately borne by Connecticut taxpayers." (Moody's Compl. at ¶ 7.) The complaints give examples of municipalities that were harmed by the defendants' conduct. (*See, e.g.,* Moody's Compl. at ¶¶ 28–9; Fitch Compl. at ¶¶ 9–10; McGraw–Hill Compl. at ¶¶ 7–8.) However, "[a] CUTPA claim must be pleaded with particularity to allow evaluation of the legal theory upon which the claim lies[,]" *Sorisio v. Lenox, Inc.*, 701 F.Supp. 950, 962 (D.Conn.1988), and these paragraphs merely provide the particulars. Neither these particulars nor the State's requests for relief[2] state the

---

**2.** The Prayer for Relief in the Fitch Complaint is as follows:

WHEREFORE, the State of Connecticut requests the following relief:
1. A finding that by the acts alleged herein, Fitch engaged in unfair and deceptive acts and practices in the course of trade or commerce within the State of Connecticut in violation of the Connecticut Unfair Trade Practices Act;
2. An injunction pursuant to Conn. Gen. Stat. § 42–110m enjoining Fitch from engaging in any acts that violate the Connecticut Unfair Trade Practices Act, including,

but not limited to, the unfair and deceptive acts and practices alleged herein;
3. An order pursuant to Conn. Gen. Stat § 42–110m requiring that Fitch submit to an accounting to determine:
a. the amount of improper fees and revenue paid to Fitch as a result of its unfair and deceptive trade practices as alleged herein;
b. the amount Fitch's unfair and deceptive acts and practices improperly increased borrowing costs for public bond issuers in Connecticut.
4. An order pursuant to Conn. Gen.Stat. § 42–110o directing Fitch to pay a civil penalty of $5,000 for each and every willful

equivalent of what is clear from the description of the first type of damages in *Levi Strauss* and from the complaints in *Butler* and *AT & T*, i.e. that the State is proceeding for the benefit of a circumscribed group of its citizens.

■ The defendants argue that the State must be seeking damages because restitution is inapplicable. However, the Connecticut Supreme Court has held that with respect to restitution under § 42–110m, the statute "vest[s] the trial court with discretion to award relief and impose penalties as it deems appropriate under the circumstances of each case." *State v. Cardwell,* 246 Conn. 721, 742, 718 A.2d 954 (1998). Damages are measured by a plaintiff's losses. *See, e.g.,* 1 D. Dobbs, *Law of Remedies* § 4.1(1), at 369 (2d ed.1993). By contrast, restitution is measured by a defendant's "unjust gain, rather than [by a plaintiff's] loss." *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 229, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002)(Ginsburg, J., dissenting)(citing Dobbs at § 12.1(1), at 9.) Thus, restitution is applicable.

Therefore, after a review of the factual allegations and the requests for relief in the complaints, the court concludes that the State is bringing an enforcement action in its sovereign capacity pursuant to § 42–110m of CUTPA.

### C. CAFA

■ The defendants also contend that based upon the number of "citizens" that the State's action may benefit, i.e., bond issuers and investors, the Class Action Fairness Act ("CAFA"), codified in relevant part at 28 U.S.C. § 1332(d)(2), applies. Under CAFA, federal courts have jurisdiction if an action is brought on behalf of more than 100 persons whose claims individually satisfy the $75,000 amount in controversy requirement of 28 U.S.C. § 1332(a), when the aggregate of those claims exceeds the sum or value of $5 million exclusive of interest or costs, and when at least one class member is diverse from at least one defendant. *See* 28 U.S.C. § 1332(d)(2)(A); (d)(6); (d)(11)(B)(i).

■ However, CAFA only applies if one accepts the premise that the State is suing not in its capacity as sovereign but on behalf of a circumscribed group of its citizens. *See, e.g., In re Katrina Canal Litigation Breaches,* 524 F.3d 700, 706 (5th Cir.2008) (affirming finding that Louisiana sought relief on behalf of citizens as recipients of insurance as basis for removal under CAFA). The court has already concluded that is not the case. This is a state enforcement action, and CAFA does not apply to such actions. *See Harvey v. Blockbuster, Inc.,* 384 F.Supp.2d 749, 752–54 (D.N.J.2005) (surveying the legislative history of CAFA and concluding that it was not Congress' intent to encroach upon state attorneys general lawsuits by enacting CAFA).

### IV. CONCLUSION

For the reasons set forth above, the Motion For Remand in case no. 3:08–cv–

violation of the Connecticut Unfair Trade Practices Act;
5. An order pursuant to Conn. Gen.Stat. § 42–110m directing Fitch to pay restitution;
6. An order pursuant to Conn. Gen.Stat. § 42–110m directing Fitch to disgorge all revenues, profits, and gains achieved in whole or in part through the unfair acts or practices complained of herein;

7. An order pursuant to Conn. Gen.Stat. § 42–110m directing Fitch to pay reasonable attorneys' fees to the State;
8. Costs of suit; and
9. Such other relief as this Court deems just and equitable.
(Fitch Compl. At 25–26.)

01314 (Doc. No. 13) is hereby GRANTED; the Motion For Remand in case no. 3:08–cv–01315 (Doc. No. 18) is hereby GRANTED; and the Motion For Remand in case no. 3:08–cv01316 (Doc. No. 22) is hereby GRANTED.

Each of these cases is hereby remanded to the Superior Court of the State of Connecticut, Judicial District of Hartford.

It is so ordered.